IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**MARTIN FERGUSON**,                              Civil Case No. 09-638-KI

                        Plaintiff,

         vs.                              OPINION AND ORDER

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

                        Defendant.


        Alan Stuart Graf
        P. O. Box 98
        Summertown, TN  38483

                Attorney for Plaintiff

        Dwight C. Holton
        United States Attorney
        District of Oregon

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Michael S. Howard
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

     Attorneys for Defendant

KING, Judge:

Claimant Martin Ferguson brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Ferguson filed an application for DIB on June 16, 2005, alleging disability beginning June 1, 2005.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, the claimant, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on October 29, 2007.

On January 24, 2008, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits.  Ferguson submitted additional evidence to the Appeals Council, but the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on April 10, 2009.

Page 2 - OPINION AND ORDER

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which

significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record and[,] if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found Ferguson insured through December 31, 2009, and that he had not engaged in any substantial gainful activity since June 1, 2005.  He found Ferguson suffered from seizure disorder and lumbar degenerative disc disease.  The ALJ determined that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

The ALJ concluded Ferguson could lift 20 pounds occasionally and 10 pounds frequently, could sit or stand six hours in an eight-hour workday, but could not be exposed to heights. Additionally, the ALJ found Ferguson experienced short-term memory loss, as a result of his medications, and could not perform work requiring detailed or complex instructions.  Given this residual functional capacity ("RFC"), the ALJ concluded Ferguson could not perform his past work but could work as a box filler, an assembler of printed products, a tableworker, and an optical goods worker.

## FACTS

Ferguson, who was 40 years old at the time of his alleged disability onset date of June 1, 2005, has a high school degree and has completed two years of college-level auto specialist coursework.  Ferguson alleges disability as a result of back pain, seizures, obesity, carpal tunnel syndrome, and migraines.

Ferguson has experienced seizures since 1990.  He had only one seizure in 2001 and one in 2002, but he had five grand mal seizures in 2003 (see Tr. 107, 82, 88, 120, 117) and four in 2004 (see Tr. 104, 99, 95, 110).  The last episode occurred in December of 2004.  At least one of the episodes in both 2003 and 2004 was due to missing a few doses of his anti-seizure medication, Dilantin.  After his onset date of disability, he reported that his seizures were "generally controlled" although he reported "episodes of twitching in the left hand, sometimes also on the right which he terms petit mal seizures."  Tr. 137.  These petit mal seizures lasted approximately five to ten seconds.  During these episodes, one of Ferguson's arms would twist–the only symptom he experienced.  Ferguson subsequently had one seizure on November 21, 2005 and another on December 19, 2005.  Those were his only grand mal seizures in 2005.  When he accidentally skipped his medication in September of 2006, he had another grand mal seizure.  In October 2006, he reported he had not had any petit mal seizures since December of 2005, although he previously had them a few times a month.  Tr. 351.  He was tolerating his medications well, with no side effects.   In records he submitted only to the Appeals Council, at a September 13, 2007 neurology follow-up, Ferguson reported experiencing the petit mal seizures several times a week that "might cause him to drop something."  Tr. 393.

Ferguson complained of back pain when he met with a doctor at the Veterans Affairs ("VA") Medical Center on December 1, 2003, but reported that he had been experiencing it for more than ten years.  The doctor reviewed the MRI scan and confirmed Ferguson has "multilevel degenerative disk disease," but described no "specific neurocompression" and did not recommend surgery.  Tr. 218.  At the VA Outpatient Clinic on October 11, 2004, Ferguson reported that his low back was feeling "quite better now" and he wanted to start lifting weights.

The physician noted Ferguson was "in no distress now.  His back seems to be pretty supple.  He can flex 0 to 80 degrees and extend 0 to 10 degrees."  Tr. 132.

On September 20, 2005, Charles J. Moehs, M.D., M.P.H., evaluated Ferguson and concluded:

> [H]e stands straight.  He has good range of motion of the back with flexion of 80 degrees, 10 degrees extension.  He is able to kneel while holding the exam table. He pulls himself up from the kneeling position with the complain[t] of some pain while doing this.  Reflexes in the lower extremities are normal.  Straight leg raising is 90 degrees bilaterally.  Reflexes are equal and one plus both in patellar and Achilles tendon area.  Sensation in the lower legs is normal as well.

Tr. 138.  Dr. Moehs concluded that Ferguson "has chronic low back pain and could do only very light work at best with all seizure precautions taken."  Id.

On October 25, 2006, Doyle Kelley, PA-C, examined Ferguson.  He diagnosed chronic lumbosacral strain with chronic pain syndrome and early degenerative joint disease.  He concluded:

> In terms of employability[,] this patient would be best suited for a sedentary line of work.  He would not tolerate heavy lifting and repetitive movement activities. It should be noted that the patient did have an EMG in Buffalo, New York [at] his last examination, which was totally normal and not suggestive [of] any radiculopathy.  I would not expect flare-ups at this time to result in additional motion loss, fatigue, or incoordination.

Tr. 350.

A November 21, 2007 lumbar MRI showed increased degenerative disc disease at L5-S1, but no spinal stenosis.

Ferguson was diagnosed with carpal tunnel syndrome and was given wrist supports on January 30, 2004.

Ferguson has also experienced headaches since the 1990s.  On May 23, 2005, he reported having headaches lasting about three hours; he would sit still and relax to treat them.  He occasionally used Tylenol, but did not find it to be effective.  The VA Outpatient Clinic started him on Topamax at that time.  On October 25, 2006, he reported he had headaches about two times a month.  He took Naproxen and slept and the headache was gone when he woke up.

David Donnelly, M.D., first examined Ferguson on July 21, 2006 for migraines and back pain.  He reported Ferguson's seizure disorder was stable, but that Ferguson experienced migraines every two weeks or so.  On October 26, 2007, Dr. Donnelly opined that Ferguson was "permanently and totally disabled from all work due to his chronic medical conditions and side effects which are exacerbated by needed medications which at this time do not have alternatives."  Tr. 380.

Ferguson is obese, weighing 230 pounds at 5'8".

On July 20, 2007, the VA awarded Ferguson a service connected disability benefit for left leg S-1 radiculopathy (10%), effective July 21, 2006, and continued his earlier awarded benefit for seizure disorder (40%) and chronic lumbosacral strain with chronic pain syndrome superimposed on degenerative disc disease (40%).  The VA also concluded Ferguson's back problems and seizure disorder "render you unable to obtain and maintain gainful employment for the time being."  Tr. 81ZC.  It based this conclusion on:  Ferguson's loss of his driver's license due to his seizure disorder, that he left his job at the convenience store in September of 2005 due to his health, and that the medical evidence showed Ferguson could not perform physical labor as he had in the past.

**DISCUSSION**

Ferguson challenges the ALJ's credibility determination, argues his obesity, carpal tunnel syndrome and migraines are severe impairments, disputes the ALJ's rejection of Dr. Donnelly's opinion, and contends the ALJ erred in evaluating the VA's disability determination.

I.    Ferguson's Credibility

Ferguson argues the ALJ's reasons for rejecting his testimony about his limitations were not sufficiently specific.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence.  Id.  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found Ferguson's reports of his limitations not entirely credible.  The ALJ pointed out the lack of objective medical evidence supporting a disabling back condition. Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Here, the lumbar x-rays from September 2005 showed moderate disc space narrowing at the L5-S1 level and mild narrowing elsewhere.  Ferguson's back had a normal range of motion.  Kelley, the physician assistant, did not preclude work, just recommended avoidance of heavy lifting and repetitive movement.  Furthermore, the November 21, 2007 MRI showed continued degeneration of the lumbar spine, but no impingement on the nerve roots or stenosis.  The medical evidence did not support Ferguson's claim that he was precluded from work due to back pain.

Additionally, although Ferguson reported to the agency on February 15, 2006 that he could not walk "very far" and had a "hard time just getting out of bed," Tr. 81V, Ferguson was working part-time up to July 15, 2005, and was able to take care of himself as of an October 2005 report.  No medical evidence indicated that Ferguson's condition had changed from then to February of 2006.

The ALJ also found Ferguson's claims of a totally disabling back condition were undermined by his activities.  Ferguson cooked, walked for exercise, read, watched movies, worked around the house, did laundry, put puzzles together, attended church and recruited people into his church, and took care of himself.  As the ALJ noted, these activities required some form of bending, extension, and flexion.

As for Ferguson's seizures, the ALJ took issue with his inconsistent reports as to their frequency.  Ferguson told the agency on November 7, 2005 that he had experienced "six grand mal seizures in the past year," during which he lost consciousness and became incontinent.  Contrary to Ferguson's reports, the medical evidence reflects two grand mal seizures in that past year:  one in November of 2004 and one in December of 2004.  See Tr. 110, 127, 137.  Ferguson had not had any seizures in 2005 as of his report to the agency.  Similarly, Ferguson told the VA neurology clinic on October 17, 2005 that he had a grand mal seizure in July 2005, although there is no independent medical record collaborating this fact, and that he had experienced six to seven such seizures in 2005.  He specifically differentiated these seizures from the smaller seizures lasting ten to fifteen seconds.  Yet, as of October 17, the medical records reflect no grand mal seizures in 2005, other than Ferguson's report of a seizure in July.

Finally, in August of 2006, he reported to the VA neurology clinic that his last grand mal seizure was in December of 2005, but that "[p]reviously he has had spells once a month for about 15 years."  Tr. 357.  Again, he differentiated the grand mal seizures from the petit mal seizures, which he reported he also had not had since December of 2005.  Based on the above, the ALJ's conclusion that Ferguson "grossly exaggerated the frequency and severity of his seizure disorder" is supported by the record.  Tr. 24.  Furthermore, the ALJ's conclusion that "[t]he records in fact reveal that the [seizures] are infrequent and well controlled with medication when he takes it" is also supported by the record.  The medical records reflect that Ferguson's seizure in September 2006 was due to missing medication, which was his only seizure in 2006.[1]

---

[1]I also note Ferguson's inconsistent reports about his migraines.  He reported to the agency that he experienced headaches two to three times a week, and that they lasted all day.  Tr. 150.  In contrast, the medical records consistently reflect Ferguson's reports of migraines twice a

Ferguson contends the ALJ did not adequately discredit his report of frequent, weekly petit mal seizures. Ferguson testified that he can drop things if he is holding something at the time a petit mal seizure occurs. Evidence received by the Appeals Council, but not seen by the ALJ, supports Ferguson's report that the "split second" rotation of his arm "might cause him to drop something." Tr. 393. The ALJ focused on the grand mal type of seizure, not the smaller, more frequent seizures, and I agree with plaintiff that the ALJ should have explored how this limitation would affect Ferguson's ability to work.[2]

Aside from Ferguson's petit mal seizures, the ALJ gave clear and convincing reasons for finding Ferguson's testimony about his limitations not fully credible.

II.    Other Impairments

Ferguson claims that the ALJ erred in failing to consider his obesity, carpal tunnel syndrome and migraines as severe impairments.

The threshold at step two is a low one. It is a "de minimis screening device [used] to dispose of groundless claims." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (internal quotation omitted).

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.

Social Security Ruling 85-28 (1985).

---

month.

[2]I do note that Ferguson reported no problems with dropping items when he met with the VA neurologist at the Portland VA Medical Center in October 2006. Tr. 351.

Contrary to Ferguson's assertion, the ALJ recognized Ferguson was obese, but wrote that Ferguson had not complained of any limitations as a result of his obesity, and none had been reported by his doctors. Furthermore, the RFC crafted by the ALJ recognized that Ferguson could perform only light work. See Burch v. Barnhart, 400 F.3d 676, 683-84 (9th Cir. 2005) (claimant did not set forth limitations from obesity and none in record). The ALJ did not err in considering Ferguson's obesity non-severe.

The ALJ also found the carpal tunnel syndrome to be a non-severe problem, writing, "the claimant has received no consistent treatment for this impairment. Furthermore, there is really nothing within the documentary evidence of record to show that this is a serious problem." Tr. 22. Plaintiff has pointed to nothing in the record to dispute the ALJ's conclusion and, as a result, I find no error.

As for the migraines, Ferguson has experienced migraines since the 1990s. However, as the ALJ pointed out, Ferguson continued to work despite any migraines through 2005. As a result, "it is logical to conclude that . . . migraine headaches were [not] responsible for his alleged inability to work." Tr. 24. There is no evidence that Ferguson's migraines worsened such that they imposed more than a minimal effect on his ability to work.[3]

I do point out the ALJ erred in reporting Ferguson never sought more aggressive treatment for his migraines. The VA Outpatient Clinic started him on Topamax for his headaches and seizures in May of 2005. Nevertheless, the evidence supports the ALJ's conclusion that Ferguson's condition imposed no credible limitations on his ability to function.

---

[3]I also note that Ferguson did not request a service-connected disability benefit from the VA for his migraines. Tr. 351.

Page 13 - OPINION AND ORDER

III.    <u>Medical Opinion</u>

Ferguson challenges the ALJ's rejection of Dr. Donnelly's opinion that Ferguson was unable to work.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. <u>Id.</u> (treating physician); <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. <u>Orn</u>, 495 F.3d at 632; <u>Widmark</u>, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. <u>Widmark</u>, 454 F.3d at 1066 n.2.

As I indicate above, Dr. Donnelly first began treating Ferguson in July of 2006. On October 26, 2007, Dr. Donnelly opined that Ferguson was "permanently and totally disabled from all work due to his chronic medical conditions and side effects which are exacerbated by needed medications which at this time do not have alternatives." Tr. 380. Dr. Donnelly referenced Ferguson's "occasional Grand Mal type seizures and frequent Petit Mal Seizures on a weekly basis," his "episodic back pain" with left lumbar radiculopathy, and his "incapacitating" migraines. Tr. 380. Dr. Donnelly opined that Ferguson's back and left leg issues precluded

frequent lifting and his "Petit Mal seizure disorder would make dropping items and placing himself or others in jeopardy very likely." Id.  He suggested that Ferguson's seizures might be caused by "structural changes in the Brain that may become worse and his seizure disorder will be come [sic] more uncontrollable over time." Id.

The ALJ did not give Dr. Donnelly's opinion any weight for several reasons:  the lack of clinical or objective findings to support his conclusion; medical records in fact contradicted his assertion; Dr. Donnelly relied on Ferguson's own record of his seizures, which the ALJ found to be inconsistent with the medical record; contrary to Dr. Donnelly, PA Kelley performed a physical examination and found Ferguson capable of at least sedentary work; and Dr. Donnelly did not appear knowledgeable about what Ferguson reported about his seizures since Ferguson was being treated by the VA Portland hospital, not the Bend VA clinic where Dr. Donnelly practiced.

Dr. Donnelly's opinion is contradicted by the nonexamining State agency physician, which means the ALJ must give specific and legitimate reasons for rejecting Dr. Donnelly's conclusion.  However, the State agency doctor's opinion alone is not substantial evidence to reject Dr. Donnelly's opinion.

As an initial matter, the State agency physician's conclusion that Ferguson is capable of work is supported by PA Kelly who, after examining Ferguson, opined he could perform sedentary work.  Additionally, the State agency physician referenced the findings of Dr. Moehs who, after examining Ferguson, concluded he could perform light work if all seizure precautions were taken.

The ALJ also gave specific and legitimate reasons for rejecting Dr. Donnelly's opinion. Essentially, Dr. Donnelly concluded Ferguson was incapable of work due to his inability to lift frequently, his potential propensity to drop things, and his short term memory loss due to medications. However, Dr. Donnelly referenced no physical examination he personally performed of Ferguson nor any diagnostic tests to support his conclusions. In fact, Dr. Donnelly's belief that weakness in Ferguson's left leg reflected radiculopathy is unsupported by any diagnostic tests, which Ferguson does not dispute. Tr. 380, 22. Additionally, there is no evidence Ferguson's headaches were "incapacitating" when he suffered from them twice a month and when he treated them with Naproxen at the time of Dr. Donnelly's opinion. Indeed, Dr. Donnelly did not even reference the headaches as a reason for Ferguson's inability to work. In short, an ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings." Batson, 359 F.3d at 1195.

Ferguson points to Dr. Donnelly's treatment notes as evidence that Dr. Donnelly knew about Ferguson's seizure treatment at the Portland VA Medical Center and used them in support of his opinion about Ferguson's inability to work due to seizures. Ferguson claims the notes support Dr. Donnelly's opinion of disability. These treatment notes were only provided to the Appeals Council, not the ALJ.

First, I reject Ferguson's suggestion that the Appeals Council was required to explain why this supplemental evidence did not undermine the ALJ's decision. The case Ferguson relies on, Ramirez v. Shalala, 8 F.3d 1449, 1451 (9th Cir. 1993), does not require the Appeals Council to articulate its reasoning for rejecting evidence. Instead, the Appeals Council is required by

regulation to consider any new evidence submitted to it relating to the period on or before the date of the decision, which it did here.  20 C.F.R. § 404.970(b).  Similarly, consistent with Ramirez, I must also "examine the full record, including the supplemental material submitted to the Appeal[s] Council[.]"  Ramirez, 8 F.3d at 1454.[4]

The additional records confirm the ALJ's conclusion that Dr. Donnelly's October 2007 opinion was unsupported by clinical findings.  Many of the supplemental records are from visits that took place in 2008, well after Dr. Donnelly issued his opinion.  Most of the remaining records are from Ferguson's colonoscopy, problems with hemorrhoids, and toenails.

The only potentially relevant document, an October 1, 2007 record from the Portland VA Medical Center, related that Ferguson had no medication side effects, that his grand mal seizures were well-controlled, and that his petit mal seizures lasted a split second and "might cause him to drop something."  Tr. 393.  As I have indicated above, the ALJ should have more carefully examined any functional limitations caused by Ferguson's petit mal seizures.  Nevertheless, the fact that Ferguson may occasionally drop things would not support Dr. Donnelly's conclusion that Ferguson was incapable of all work.[5]  I note, as did the ALJ, that Ferguson's reports to his doctors reflect he suffered from petit mal seizures less often than Dr. Donnelly believed.  For

---

[4]Furthermore, additional evidence presented to the Appeals Council but not seen by the ALJ may be considered in determining if the ALJ's denial of benefits is supported by substantial evidence.  Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000).  The court may not hold on the basis of the additional evidence, however, that the claimant is entitled to an immediate award of benefits.  The case must be remanded to the ALJ for consideration of the new evidence, rebuttal by the Commissioner, and any additional testimony needed because of the new evidence.  Id.

[5]No record supports Dr. Donnelly's suggestion that Ferguson might put someone in jeopardy while experiencing a petit mal seizure.

example, as of September 2006, he had not had any petit mal seizures since December of 2005. Tr. 351.

On the whole, the ALJ did not err in concluding Dr. Donnelly's opinion was entitled to no weight. The ALJ provided specific and legitimate reasons to reject the opinion, and those reasons were supported by substantial evidence in the record.

IV.     VA Disability Rating

The VA found Ferguson 80% disabled on July 21, 2006 due to the seizure disorder and back pain. It found him unemployable as of July 20, 2007 due to the addition of left leg S-1 radiculopathy.

A VA disability rating is entitled to great evidentiary weight in a Social Security proceeding. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). Since the VA and SSA criteria for determining disability are not identical, an ALJ may give less weight to a VA rating decision by giving persuasive, specific, and valid reasons for doing so that are supported by the record. Id.

The ALJ rejected the VA's unemployability decision, concluding that it was not supported by clinical evidence, that Ferguson's activity level undermined his assertion of disability, and the VA and SSA criteria for determining disability are too dissimilar.

To the extent the ALJ gave less weight to the VA decision due to the differences between the VA and SSA disability programs, this is not a valid reason. Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 695 (9th Cir. 2009). However, the ALJ also rejected the VA determination because it was "not supported by clinical evidence." Tr. 24.

The Commissioner argues the ALJ meant that the 10% left leg S-1 radiculopathy was not supported by clinical evidence. It is true that the ALJ referenced numerous diagnostic tests, such as EMG testing showing no radiculopathy in Ferguson's left leg and an MRI scan confirming any back pain did not result in radiculopathy. Tr. 22-23. Indeed, PA Kelley specially pointed out the results of the EMG, which he characterized as "totally normal and not suggestive [of] radiculopathy." Tr. 350. Instead of these tests, the VA apparently relied on Ferguson's reports to a physician that his left sciatic nerve was injured during surgery and the resulting tentative diagnosis of "[p]ossible L sciatic neuropathy vs S1 radiculopathy." Tr. 353.

The problem with the Commissioner's argument, however, is that the ALJ did not discuss the tentative diagnosis of possible left sciatic neuropathy or S1 radiculopathy. I would be hard-pressed to conclude that the ALJ considered this tentative diagnosis, and the VA's reliance on it in awarding service-connected benefits, when the ALJ did not discuss the evidence in his decision. The Court cannot "affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (internal quotation omitted).

In short, the ALJ's only acceptable reasons for rejecting the VA's decision that Ferguson is unemployable consists of the one sentence that it is "not supported by clinical evidence" and that Ferguson's activity level is inconsistent with disability. These reasons are not sufficiently "persuasive, specific, and valid" to permit affirmance of the ALJ's decision.

V.      Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey, 298 F.3d at 1076-77. The court should credit evidence and

immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.  If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman, 211 F.3d at 1178-79.

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (recognizing split within the circuit on whether the rule is mandatory or discretionary but not resolving the conflict).  The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant.  Connett, 340 F.3d at 876.  On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

This is not the unusual case.  The ALJ did not properly consider whether Ferguson's petit mal seizures would impose any functional limitations.  If Ferguson does drop items, as he contends, testimony from a VE is required to determine whether he is able to perform work as a box filler, an assembler of printed products, a tableworker, and an optical goods worker, as initially believed by the ALJ, or whether other appropriate work can be identified.  See Harman, 211 F.3d at 1180 ("[i]n cases where the testimony of the vocational expert has failed to address a

claimant's limitations . . . , we consistently have remanded for further proceedings rather than payment of benefits").

Additionally, the ALJ should more carefully evaluate the VA's unemployability determination and identify "persuasive, specific, and valid reasons" for giving the determination less weight.  See McCartey, 298 F.3d at 1076.

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____16th_____ day of September, 2010.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge